sburIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:15cr132 |
| | ) | |
| STEPHANIE ALMOND, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING

The United States of America, by and through the United States Attorney, Dana J. Boente, and Elizabeth M. Yusi, Assistant United States Attorney, and offers the following with respect to the sentencing factors under both the United States Sentencing Guidelines and 18 U.S.C. § 3553(a).   Pursuant to the Plea Agreement, the government objects that the three-level role reduction was not applied to the Guidelines under U.S.S.G. § 3B1.2(b).   Considering this objection and the Plea Agreement, the government believes that the applicable Guidelines level is 12, and the advisory Guidelines range is 10-16 months' imprisonment.   It is the government's position that a sentence at the top of the advisory Guideline range sufficient but not greater than necessary to achieve the purposes of sentencing.   In support of its position, the government states as follows:

## I.   BACKGROUND FACTS

On January 27, 2016, defendant STEPHANIE ALMOND pleaded guilty to Count Two of the pending indictment, charging her with mail fraud, in violation of 18 U.S.C. § 1341.   She is scheduled to be sentenced before this Court on Thursday, June 9, 2016.   At that time, due to the nature and circumstances of the offense, and related conduct, the government will ask for the imposition of a sentence at the high end of the agreed-to Guidelines range, which is 16 months.

HALL and her coconspirator and daughter, CINDY HALL, sponsored and administered the Summer Food Service Program (SFSP) in the Tidewater area for several years.   The United States Department of Agriculture (USDA) funds the SFSP, which is designed to ensure that low-income children continue to receive food when school is not in session and the free-lunch program is unavailable.   SFSP is administered by sponsors, such as HALL and ALMOND, who coordinate sites where the food is served to the children.   The Virginia Department of Health (VDH) administers the SFSP under the Nutrition School Program for SFSP program sponsors and sites within the Commonwealth of Virginia.

Initially, the defendants became involved in the Virginia SFSP after ALMOND incorporated Neighborhood Pride (NP), a non-profit corporation registered in the Commonwealth of Virginia.   ALMOND, through NP, applied to the VDH for the SFSP and sponsored numerous sites located in the Eastern District of Virginia where eligible children would be fed breakfast, lunch and dinner for the summers of 2008 thru 2011.   After the summer of 2011, VDH disqualified ALMOND and NP from participating in the SFSP due to discrepancies in her paperwork and the amount of money she was reimbursed by VDH.   In fact, there is still an outstanding payment that ALMOND owes to VDH to make up for some of the found discrepancies[1].

In 2012 and after ALMOND's disqualification[2], CINDY HALL incorporated Send Thee Community Outreach (STCO), a non-profit corporation registered in the Commonwealth of Virginia.   In April 2012, STCO and HALL applied to the VDH for the SFSP to sponsor

---

[1]   The government will present evidence and testimony through Virginia State Police Special Agent Rob Cully at the sentencing to support facts included herein but not included in the PSR.

[2]   Pursuant to the Plea Agreement, the government submits that because the time period of the instant case only covers then HALL was the lead administrator, ALMOND should receive a 3-level reduction for her role in the covered period.

eighteen (18) sites located in the Eastern District of Virginia where eligible children would be fed breakfast, lunch and dinner during the summer of 2012.   In 2013, STCO and HALL applied to the VDH for the SFSP to sponsor thirty-one (31) sites where eligible children would be fed breakfast, lunch and dinner during the summer of 2013.   In her applications, STCO and CINDY HALL requested advance payment for operating and administrative costs.   HALL, ALMOND, and others known and unknown, administered the SFSP on behalf of STCO.   HALL trained site administrators to keep daily tallies of the number of children they fed at each meal and told the site administrators to use pencils when writing the tallies.   In many instances, without the knowledge of the site administrators, HALL would then alter the tally sheets, forge initials and signatures, and greatly exaggerate the number of children being fed at each site through the SFSP.

In other instances, HALL submitted meal counts to VDH for reimbursement yet did not provide any meals to children at the stated food site.   For example, a ministry in Newport News, Virginia, discussed with CINDY HALL about participating in the SFSP.   However, the ministry never hosted or participated in the SFSP.   Yet, STCO requested and received reimbursement from VDH for the food site that did not exist in summer 2013.

After each summer, VDH requested paperwork from HALL to support her reimbursements from the summer.   CINDY HALL sent altered bank records to VDH in support of the reimbursement claims for 2012 and 2013.

In addition to the reimbursements for meals, STCO also requested administrative reimbursements for supposed payments made to STCO "employees" at the sponsor sites. STCO never paid these alleged employees but was reimbursed for the wages by VDH.   When interviewed, these alleged employees did not even know they were eligible for wages; the

3

majority of them were volunteers at the churches or youth programs where the SFSP was supposed to bring the meals.      HALL provided fraudulent time sheets and cancelled checks in support of these claims.

In 2012 and 2013, CINDY HALL and STCO were only authorized to provide food from their approved vendor, the Suffolk Public Schools' Food and Nutrition Services (SPS). Therefore, CINDY HALL and STCO could only be reimbursed for those meals provided by SPS that were actually served to children.

In 2012, CINDY HALL requested and received approximately $ 220,971 in reimbursements from VDH.    She falsely claimed they served 30,895 breakfasts, 47,180 lunches, and 1,675 suppers to eligible children through STCO.    However, STCO only ordered and received from SPS 17,005 breakfasts and 28,040 lunches.    Further, in reality, STCO provided an even fewer amount of breakfasts and lunches to children at sites.

In 2013, CINDY HALL requested and received approximately $ 353,789 in reimbursements from VDH.    She falsely claimed they served 49,496 breakfasts, 70,568 lunches, and 4,932 suppers to eligible children through STCO.    However, STCO only ordered and received from SPS 18,249 breakfasts and 35,089 lunches.    In reality, STCO provided an even fewer amount of breakfasts and lunches to children at sites.

The investigation revealed that STCO did provide some meals to kids.    However, many of those people that ran the sites stated that the food was usually meager and the program was unorganized and mismanaged.    SFS stated that they had major concerns that STCO did not keep the food at safe temperatures.    SFS warned STCO on many occasions about these concerns. Eventually, STCO bought coolers in an attempt to maintain the safety of the food.

Throughout the period of the alleged activity, CINDY HALL routinely gave SFSP funds to STEPHANIE ALMOND, either directly to ALMOND or to ALMOND's new "nonprofit." Workers at SPS saw ALMOND when she was helping to pick up food.   However, ALMOND was actively trying to hide at the food site prior to being seen.

In 2014, VDH informed CINDY HALL and STCO, via a letter sent through the U.S. Mail, that they were disqualified as a sponsor from the SFSP program.   However, for Summer 2014, HALL's sister and ALMOND's daughter, T.J., applied to sponsor the SFSP program at most of the same sites that STCO claimed to serve.   VDH found that T.J. used the same and altered documentation that HALL and STCO used in support of its previous applications.   VDH recognized the documents and alterations and informed both STCO and T.J. that they were not going to be part of the program.

In total, HALL and ALMOND received almost $ 250,000 that they were not entitled to from VDH and the SFSP.   This was approximately $ 125,000 per year for just a few months of alleged "work."

## II.    STANDARDS GOVERNING SENTENCING

The standards governing sentencing are well-established.   In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.   *Id.* at 264; *see also United States v. Kimbrough,* 552 U.S. 85 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").   In *Gall v. United States,* 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing guideline range, permit the government and the defendant "an

opportunity to argue for whatever sentence they deem appropriate," consider all of the Section 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50.   The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."   *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence."   *United States v. Simmons*, 269 Fed. App'x 272, 2008 WL 681764, at *1 (4th Cir. March 11, 2008) (citing *United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007)).   When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case."   *United States v. Cuthrell*, No. 12-4077, 2012 WL 3643677, *1 (4th Cir. Aug. 27, 2012) (citing *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)).   Ultimately, a court "must state in open court the particular reasons supporting its chosen sentence."   *Carter*, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)).

### III.     18 U.S.C. § 3553(a) FACTORS

A sentence of 16 months is reasonable and appropriate in the instant case.   As discussed below, the application of the 3553(a) factors – in particular the nature and circumstances of the

offenses, related conduct, and the need to promote adequate respect for the law – support the government's requested sentence in this case.

### A.     Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious.    First, the defendant and her daughter took advantage of a federally-funded program that was meant to feed children who had no other, or limited, means of nourishment.    Obviously, the SFSP is not meant to make sponsors rich, but rather to adequately cover food costs and reasonable administrative costs of running the program.    Most of the sponsor sites of the SFSP tend to be civically-minded groups, such as churches in low income areas or organizations that run summer programs for under-privileged youth.    Knowing that VDH could not oversee each and every site that STCO allegedly sponsored, HALL and ALMOND used the program to fleece money.    While $ 250,000 is not the most egregious amount this Court has seen in terms of fraud loss, this was only for approximately 6 months of work (three months per summer).    Considering the short amount of time, this was a significant windfall to HALL and ALMOND.

Defendant and her daughter had been fleecing VDH and the SFSP for years.    Our charged conduct covers two years, but based on the monetary judgment bending against ALMOND, the conduct most likely covered many more years.    VDH disqualified ALMOND, but that did not stop this family.    Then, HALL took over as lead.    Then, when she was disqualified, T.J. attempted to continue the fraud.    Luckily, VDH recognized the consistencies, and finally cut this family off from the SFSP.

### B.     History and Characteristics of the Defendant

This factor also supports a 16 month sentence.    The defendant did admit responsibility. However, she has made no efforts to repay any of the loss.    This is the case even though she

owns two different houses. Based on this conviction and the amount of time covered by the instant offenses, the government avers that this supports that defendant has a fraud mentality and is continuously trying to find the easy way to make a living. Because of these facts, this factor supports a sentence of 16 months.

### C. Promote Respect For The Law and Adequate Deterrence to Criminal Conduct

A 16 month sentence also will promote respect for the law. The majority of Americans have personal and family stressors and financial pressures. Luckily, the majority of Americans do not create fraudulent nonprofits and apply for federal funds knowing that they will be putting those funds towards personal use. When someone does decide to steal, especially in such an orchestrated fashion and with a significant amount of loss to the victim, the Court needs to show that there are serious consequences. Because of the length of time that defendant has been involved with the crimes, it is unclear whether the defendant will engage in any crimes in the future. However, the government submits that a substantial sentence is necessary to deter defendant and other persons from engaging in similar conduct. Therefore, a 16-month sentence also will promote respect for the law.

## IV.    CONCLUSION

For the foregoing reasons, the Government submits that a sentence of 16 months would be

sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully Submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY


By:    _____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - elizabeth.yusi@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of June, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Moody Stallings, Esq.

I further certify that on this 2nd day of June, 2016, I caused a true and correct copy of the foregoing to be e-mailed to the following:

Kristie M. Milby
United States Probation Officer

By: _____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – elizabeth.yusi@usdoj.gov

10